SPARKMAN v. SUPREME COUNCIL AMERICAN LEGION OF HONOR.

1. REMOVAL OF CASES—PRACTICE.—In order to remove a case from State to Federal Courts, on grounds of prejudice or local influence, the defendant must obtain an order from the Federal Court for removal, and file that order in the State Court, and take from it a transcript, and file in the Federal Court.

2. EVIDENCE.—Appellant is not prejudiced by admission of immaterial evidence, and cannot complain, if it first introduces the subject, and respondent brings out all connected with it.

3. WAIVER—INSURANCE.—MUTUAL INSURANCE Co. and fraternal benefit societies are governed by same rules of law as to waiver as old line insurance company.

4. IBID.—CHARGE.—Request as to waiver could not have been charged without invading province of the jury.

5. PRINCIPAL AND AGENT—CHARGE—MUTUAL INS. Co.—Explanation of request as to agency of Mutual Insurance Co., not objectionable.

6. WAIVER—CHARGE—FRATERNAL SOCIETY.—That portion of the charge excepted to, when taken in connection with the general charge, only instructed the jury that subordinate lodges of a fraternal society could only waive requirements while acting within the scope of their authority.

7. IBID.—No error in explanation to request as to knowledge and waiver.

8. PRINCIPAL AND AGENT—CHARGE.—Explanation of request construed with reference to whole charge is not contrary to doctrine that knowledge of agent acting within the scope of his authority is knowledge of the principal.

9. IBID.—CHARGE.—Request as to agency could not have been charged without trenching on the province of the jury.

10. WAIVER—CHARGE.—Explanation of request as to waiver, when construed in connection with the whole charge, is not erroneous.

11. PRINCIPAL AND AGENT.—RATIFICATION by principal is only necessary when agent acts without the scope of his authority.

12. CHARGE.—The Circuit Judge in this case fully came up to the requirement to declare the whole law applicable to the issues in this case.

Before BENET, J., Georgetown, June, 1899. Affirmed.

Action by Julia B. Sparkman against Supreme Council American Legion of Honor. Defendant appeals.

*Mr. Walter Hazard,* for appellant, cites: *As to removal of the cause:* 102 U. S., 141; 104 U. S., 5, 14; 106 U. S., 122; 131 U. S., 240; 108 U. S., 212; 117 U. S., 430; 141 U. S., 589; 142 U. S., 459; 51 Fed. R., 774; 77 Fed. R., 485; 148 U. S., 255; 129 U. S., 688; 119 U. S., 464. *What is trial?* Code, 273; 2 Mill. C. R., 155. *As to irrelevant testimony:* 42 S. C., 124; 29 Am. St. R., 603; 86 Ill., 479. *The doctrines of waiver and estoppel as applied to old line insurance companies do not apply to such societies as defendant:* 1 · Allen, 294; 42 N. J. Eq., 460; 12 C. E. Gr., 33; 6 Gray, 169; 26 Mo. App., 218; 78 Me., 541; 152 Mass., 272; 29 N. E. R., 1123; 153 Mass., 83; 50 Ill. App., 101; 50 M. A., 472; 4 Allen, 116; 14 Gray, 203; 3 Allen, 602, 360, 213; 144 Mass., 434; 146 Mass., 248; 152 Mass., 275; 29 S. C., 563; 96 U. S., 234, 572; 63 Md., 86. *Officers of mutual insurance company cannot waive essential parts of contract unless expressly authorized:* 4 S. C., 321; 93 U. S., 24; 6 Gray, 173; 17 Mass., 29; 11 Cush., 265; 3 Gray, 589; 18 Mo. App., 189; 1 Allen, 294; 42 N. J. Eq., 460; 4 Allen, 116; 3 Ib., 360, 602; 14 Gray, 203; 9 Allen, 329; 78 Me., 541; 144 Mass., 434; 152 Ib., 275; 153 Ib., 83; 28 At. R., 690; 22 Mo. App., 127; 32 Ib., 312; 9 Allen, 329. *The insured cannot rest upon a voluntary indulgence shown him at one time, or a number of times, as a ground for waiver of a condition of his certificate:* 104 U. S., 252; 64 Ia., 134; 21 At. R., 80; 103 Ia., 643; 41 W. N. C., 291; 18 Ont. App., 335; 139 Pa., 546. *Collector of subordinate council cannot bind supreme council by waiving prompt payment, and such acts are only binding on latter when notified by it:* 117 U. S., 530; 29 N. E. R., 1123; 153 Mass., 83; 22 Mo. App., 127; 27 S. C., 134; 39 S. C., 379; 37 S. C., 56; 47 S. C., 147; 6 Rich., 508; 10 Rich., 337; 104 U. S., 258; 62 Md., 202; 53 Miss., 233; 29 S. C., 569; 29 S. E. R., 322; 40 S. W., 553; 72 N. W., 770; 40 Md., 572; 117 U. S., 519; 96 U. S., 240; 105 U. S., 355; 88 N. Y., 541; 95 Pa. St., 45; 58 Ib., 443; 7 R. I., 429; 46 Wis., 671; 95 U. S., 427; 40 S. W. R., 557: 47 P. R., 375; 28 N. Y., 177; 96 U. S., 572; 95 U. S., 326;

2—57

92 U. S., 380; 47 S. W., 533; 31 S. E. R., 902; 92 U. S., 380; 20 N. Y., 55; 2 Den., 75; 18 N. Y., 389; 33 N. J., 487; 8 Bosw., 597; 2 Laus, 480; 9 Cush., 473; 7 Cush., 175; 30 Pa., 314; 12 Gray, 265; 6 Gray, 173; 3 Gray, 589; 36 Md., 119; 13 Md., 329; 22 Mich., 467. *As to ratification:* 9 Pet., 607; 58 Pa., 452; 23 Conn., 244; 19 Barb., 440. *As to imputed knowledge:* 10 Rich., 293; 11 S. C., 408; 37 S. C., 100; 33 S. C., 473; 40 S. C., 151; 50 S. C., 259; 11 Wall., 367; 12 Cal., 377; 2 Hill, 451; 170 U. S., 156; 49 S. W. R., 644; 4 Paige, 127; 13 La., 525; 24 Am. St. R., 227; 53 N. Y., 144. *An agent may perform an act within the general scope of his agency, which is unauthorized because it violates his instructions in one or more particulars:* 29 S. E. R., 322; 95 U. S., 427; 105 U. S., 355; 163 U. S., 288; 117 U. S., 519; 96 U. S., 240; 41 Conn., 168; 66 N. Y., 274; 91 Pa., 387; 58 Ala., 476; 85 N. Y., 278; 35 N. E. R., 678. *Knowledge of the agent here cannot be imputed to the defendant:* 170 U. S., 156; 49 S. W., 644; 95 U. S., 326. *Judge should have charged all law applicable to the case:* Con. 1895, art. V., sec. 26; 47 S. C., 488. *Rule in North Carolina:* N. C. Code, 413; 2 Dev., 452; 13 Ired.; 404; 65 N. C., 288; 78 Ib., 523; 87 Ib., 547; 93 Ib., 523; 94 Ib., 96; 104 Ib., 800.

*Messrs. Huger, Sinkler, J. N. Nathans, jr.,* and *M. L. Bonham,* contra.

*Mr. Nathans* cites: *Same rule as to waiver applies to mutual insurance companies as to old line companies:* 55 S. C., 589. *Modification of request as to agency applied only when agent was acting within scope of his authority:* 93 Fed. R., 753. *Propositions not specially requested cannot be excepted to for failure to charge:* 54 S. C., 444; 32 S. C., 281; 15 S. C., 488.

*Mr. Sinkler* cites: *Motion as to removal of cause too late:* 51 N. W., 310. *Objecting party must state grounds:* 51 S. C., 487. *Party cannot object to testimony to which he*

*refers in his examination:* 53 S. C., 258. *As to charge on waiver:* 36 S. C., 216. *Not error to refuse request on point already covered:* 49 S. C., 304. *Subordinate lodge and its officers are agents of supreme lodge:* 39 S. W. R., 335; 44 Wis., 369, 376.

March 21, 1900. The opinion of the Court was delivered by

MR. JUSTICE GARY. The record contains the following preliminary statement of the case: "This action was commenced in the Court of Common Pleas for Georgetown County on March 2, 1899, for the recovery of $5,000, alleged to be due by the defendant to the plaintiff upon a benefit certificate issued by defendant to the plaintiff's husband, George E. T. Sparkman, M. D., with interest from date of his death, May 29th, 1898. The action was tried at the June (special) term of the Court on June 19-21, 1899, before a jury, his Honor, Judge W. C. Benet, presiding. The jury found a verdict in favor of the plaintiff for the sum of $5,371.53. The case was called by the presiding Judge about 4 o'clock P. M., on Monday, June 19th. The defendant's attorney moved that the cause be withdrawn from the said Court and removed to the Circuit Court of the United States for the District of South Carolina, on the ground of prejudice and local influence." He presented in support of the motion a petition, together with the bond executed in accordance with the requirement of the Federal Statutes.

The defendant appealed upon numerous exceptions, the first two of which are as follows: 1. "Because, it is respectfully submitted, his Honor, the presiding Judge, erred in refusing the defendant's motion, made on the 19th of June, that the case be withdrawn, and that the Court of Common Pleas refuse to entertain further jurisdiction thereof, in consequence of the removal of the same into the Circuit Court of the United States for the District of South Carolina, it having been made duly to appear to the Court that proper papers for the removal of the cause

to the United States Court had been forwarded to Charleston on Saturday, the 17th June, 1899, and were presumably on file in the said United States Court at the time said motion was made.   2. Because, the defendant having renewed its motion for a stay of proceedings and for the removal of the cause to the United States Circuit Court, on the morning of June 20th, 1899, before the taking of testimony had been begun, and having informed the Court that, as a matter of fact, the petition for removal, pursuant to the Federal Statute, had been filed in the United States Circuit Court before the call of this case on the preceding day, to wit: on June 19th, 1899, it was error in the presiding Judge *to again* refuse said motion, and order the cause to proceed to trial; whereas, it is respectfully submitted, upon the filing of the petition in the Federal Court on June 19, 1899, the latter Court had *eo instanti,* acquired jurisdiction of the cause, and the State Court should have proceeded no further therein, until after the action of the Federal Court upon the petition for removal had been made to appear by competent evidence."    In the case of *Pennsylvania* v. *Bender,* 13 Sup. Ct., 591, Mr. Justice Brewer, for the Court, thus lays down the proper practice in such cases: "The act of 1887 (volume 24, p. 552, § 2,) establishes a different procedure, as follows: Any defendant * * * may remove such suit into the Circuit Court of the United States for the proper district * * * when it shall be made to appear to said Circuit Court that, from prejudice or local influences, he will not be able to obtain justice in such State Court.    There is no specific declaration when proceedings in the State Court shall stop. The right to a removal is determined by the Federal Court, and determined upon evidence satisfactory to it.    When it is satisfied that the conditions exist, the defendant may remove.    How?    The proper way for him is to obtain an order from the Federal Court for the removal, file that order in the State Court, and take from it a transcript and file it in the Federal Court.    It may be said that these steps are not in terms prescribed by the statute.    That is true, and also

true that no specific procedure is named. The language simply is that the defendant may remove when he has satisfied the Federal Court of the existence of sufficient prejudice. The statute being silent, the general rules in regard to the transfer of cases from one Court to another must obtain. If the order of one Court is to stay the action of another, the latter is entitled to notice. If a case is to pass from one Court to another, this is done by filing a transcript of the record of the one in the other. *Virginia v. Paul,* 148 U. S., 13 Sup. Rep., 536. Such orders and transfers are generally in appellate proceedings, yet something of the same kind is appropriate and necessary in the orderly administration of affairs, to transfer by order of a Federal Court a case from the State Court to itself. Certainly this statute does not abolish the law of comity which controls the relations of Courts of two sovereignties, exercising jurisdiction within the same territorial limits, nor does it abolish the duty of counsel to seasonably advise the Courts, of which they are counsel, of any matters which, if known, would prevent an erroneous exercise of jurisdiction. At any rate, if these exact steps are not requisite, something equivalent thereto is. If there had been more attention paid to these matters in removal proceedings, there would have been less irritation in State tribunals at removals." The stenographer being absent at the convening of the Court, his Honor, Judge Benet, thus states what took place in regard to the removal proceedings: "I will now make a statement of what occurred yesterday afternoon. On the call of the Calendar No. 1, this case was marked for trial. Counsel on both sides were asked if they were ready. Counsel for the plaintiff and the defendant both announced 'ready.' Thereupon jury No. 1 were put in charge of the case. Counsel for the defendant requested the jury to be sworn on their *voir dire,* and just before the oath was administered begged leave to move that the case be withdrawn, on the ground that he had sent the proper papers for the removal of the cause to the United States Court; that they had been

sent to Charleston on Saturday, with instructions that they should be filed forthwith, and he read an affidavit, on information and belief. Counsel stated, on information and belief, that the papers had been filed; that it was a mere expectation or a presumption that they had been filed, but he could not say, as a matter of fact, that they had been filed. The Court ruled that in the absence of proof that the Federal Court had acquired jurisdiction of the case, the case should go on to trial in this Court, this Court having jurisdiction. In addition, it should be stated that counsel on both sides were asked if they had any objections to jury No. 1. Each side had the opportunity to exercise its right to challenge, and plaintiff exercised it, while the defendant announced that it had no objection to the jury. The jury were then sworn on their *voir dire.* Thereupon counsel for the plaintiff adduced the first witness for the plaintiff." The presiding Judge followed the proper practice in retaining jurisdiction of the same, and these exceptions are overruled.

The third exception is as follows: "Because, it is respectfully submitted, his Honor, the presiding Judge, erred in overruling the defendant's objection to the following question propounded by the plaintiff's attorney to the witness, J. I. Hazzard, collector of Prince George Council, A. L. of H., and in permitting said question to be asked, viz: 'When did you make that record there where the name of G. E. T. Sparkman is marked 'suspended'—what time?' Whereas, it is submitted that, inasmuch as the laws of the appellant order contain no provision making it the duty of the collector of a subordinate council to enter the suspension of a member upon his book, and suspensions take effect by said laws, *ipso facto,* upon non-payment of assessments, it was and is immaterial upon what date the said entry was made by the collector." If, as appellant contends, suspensions take effect, under the laws of the association, *ipso facto,* upon non-payment of the assessments, and the testimony was immaterial, then it was not prejudiced by its

introduction. There is, however, another reason why the exception cannot be sustained. While Mr. J. I. Hazzard, a witness for the defendant, was being examined by the defendant's attorney, the following took place: Q. Please refer to book and state what entry you have on it? A. Entry on the book is, "Date, April 1st, '98, assessment No. 8, G. E. T. Sparkman, $9.00." Q. Is there any other entry there? A. "Suspended April 30th," the last day the payment was due. As the appellant introduced the entry in evidence, it ought not to complain if the respondent brought out all the facts as to the manner and time in which it was made.

The fourth exception is as follows: "Because, it is respectfully submitted, the presiding Judge erred in overruling the defendant's objection to the following question, addressed by the plaintiff's counsel on the cross-examination to the witness, J. I. Hazzard, collector of the subordinate council, A. L. of H.: 'Do all of the members of this lodge go to your office to pay their assessments?' Whereas, there being no provisions in the laws of the order requiring the collector of a subordinate council to call on the members for their assessments, but, on the contrary, the law providing explicitly that all members shall pay their assessments to the collector at stated times *without notice,* testimony intended to prove a contrary custom was incompetent and inadmissible." We do not suppose that all the members of any lodge in the world, go to the office of its collecting agent to pay their assessments, and, therefore, cannot see how the appellant suffered prejudice from such testimony.

The fifth exception is as follows: "Because, it is respectfully submitted, his Honor, the presiding Judge, erred in modifying the defendant's third request to charge by adding thereto the following qualification: 'At the same time, it is possible for the officers of such company to so conduct themselves toward the assured as to amount to a waiver of the terms of a policy.' Whereas, it is respectfully submitted, that in the case of mutual insurance companies and fraternal beneficiary associations, like the

appellant, no waiver can arise from the mere acts of the officers, nor even from their express agreement, unless they are specifically authorized and empowered by the laws of the company or association to make such waiver." In the case of *McBryde* v. *S. C. Mut. Ins. Co.,* 55 S. C., 589, the Court quotes with approval the following language from 16 A. & E. Enc. of Law, 17, 18: "The only distinction between contracts of mutual insurance and other insurance contracts consists in the fact that the liquidation of those of the former class is made from a fund obtained by periodical tax upon the members at stated intervals, or as required, while in other cases the amount stipulated to be paid to the beneficiary is absolute, and depends only on the success of the business and the ability of the insurer to pay the stipulated indemnity." In the same volume, at page 26, the following language from Bacon on Ben. Socs. and Life Ins., section 78, is quoted with approval: "So far as corporations carrying on a life insurance business, either on the plan of annual, semi-annual, or quarterly premiums, and the accumulation of a reserve fund, or upon the new assessment plan, where calls are made as necessity requires, monthly or less or more frequently, are concerned, it may be said that it is hard to conceive of any reason why such organizations should be governed by any rules different from those governing other corporations." In that case, this Court said corporations carrying on business on the assessment plan, or on the other plan just mentioned, have the same object in view— there is the same necssity for intrusting the conduct of the business to a certain number of persons, and there is no reason why a more favorable rule should prevail in behalf of those conducting business on the assessment plan than those carrying on the business on a different plan. It will thus be seen that the doctrine for which the appellant contends is not recognized in this State.

The sixth exception is as follows: "Because, it is respectfully submitted, his Honor, the presiding Judge, erred in refusing the defendant's sixth request to charge; whereas, it is

submitted, that, as a matter of law, the insured has no right, in the absence of an agreement to that effect, to rest upon a voluntary indulgence shown him on one occasion or on a number of occasions, as ground for claiming waiver of the condition of the policy requiring payment at a stated time." The eighth request is as follows: "8. A usage on the part of an insurance company to accept payment of the premium or assessment after maturity, cannot be construed as a waiver of the clause of forfeiture, as implying an agreement to waive it or to continue the same indulgence for the time to come. The assured has no right, without some agreement to that effect, to rest on such voluntary indulgence, shown on one occasion or on a number of occasions, as a ground for claiming it on all occasions." In refusing the request, his Honor said: "I can't charge you that. I have explained to you what is meant by waiver, and you are the judge of the facts of the case, whether waiver has been established or not. The jury are to say, as a matter of fact, whether the evidence amounts to a waiver." His reasons for refusing to charge the request are satisfactory to this Court. He could not have charged as requested, without invading the province of the jury.

The seventh exception is as follows: "7. Because, it is respectfully submitted, his Honor, the presiding Judge, erred in explaining or qualifying the defendant's tenth request to charge by saying: 'That simply means unless the collector had a right to act as agent of the company.' Whereas, it is respectfully submitted, that the request did not mean what the Judge declared it to mean, since the collector of the subordinate lodge or local council of a benefit society might have a right to act as agent of such society, and yet might not have authority, either express or implied, to receive payment of an assessment from the assured after maturity." The tenth request is as follows: "10. The receipt of an assessment after maturity by the collector of a subordinate lodge or council of a mutual or benefit society is not binding upon the supreme lodge of the order,

unless the collector had authority, either expressed or implied, to receive it." The explanatory words of the presiding Judge must be construed in connection with the request, and mean unless the collector had a right to act as agent of the company in receiving the assessment after maturity, and was but another mode of expressing what was intended by the request to charge.

The eighth exception is as follows: "8. Because his Honor, the presiding Judge, erred in modifying or explaining the defendant's tenth request to charge, by saying to the jury, 'That means, unless the collector had a right to act as agent of the company, because said modification of explanation necessarily conveyed to the minds of the jury the idea that if the collector of a subordinate lodge or council of a mutual benefit society had a right to act as the agent of the society, he would also necessarily have the right to bind the society by receiving payment of an assessment from the assured after maturity.' It is submitted that the right to waive punctual payment does not belong to such a collector, unless he is expressly authorized by the laws of the order or society to do so." This is disposed of by what was said in considering the seventh exception.

The ninth exception is as follows: "9. Because his Honor, the presiding Judge, erred in refusing the defendant's eleventh request to charge. It is submitted, as matter of law, that in the case of benefit societies or fraternal benevolent associations, like the appellant, the act of the collector of a subordinate council or lodge in receiving past due assessments, cannot amount to a waiver of the requirement of prompt payment, unless the managing officers of the supreme lodge or council have actual knowledge thereof and acquiesce in it." The eleventh request is as follows: "11. The receipt of previous assessments by such collector when they were past due, will not amount to a waiver of prompt payment, unless it is shown that the managing officers of the supreme lodge or council had knowledge thereof and acquiesced in it." The presiding Judge said:

"I can't charge you that.    I have already charged you what is meant by waiver, and the law leaves it with you to say whether waiver has been proven.    I have also charged you that knowledge of the agent or information of the agent, in connection with this agency, is knowledge or information of the principal."    For him to have charged as requested, would have been an invasion of the jurisdiction conferred upon the jury.

The tenth exception is as follows: "10. Because his Honor, the presiding Judge, erred in modifying the defendant's fourteenth request to charge as follows: 'I charge you that, with this modification: If it has been proven to the satisfaction of the jury that the subordinate lodge or officer was acting as agent of the supreme lodge, and if the conduct or actions of the officer of the subordinate lodge amounted to a waiver, then that waiver would bind the supreme lodge.    This knowledge or information of the agent, acting in the capacity of the agent, would bind the principal, or supreme lodge.'    It is respectfully submitted that this statement of law is erroneous, and that neither the subordinate lodge of a benevolent society nor the officers of such subordinate lodge can bind the supreme lodge by their unauthorized acts in extending indulgence to a member who is in default by operation of the laws of the society.    The power to bind the supreme lodge must be expressly given to such subordinate lodge or its officers by the laws of the society."    The fourteenth request is as follows: "14. The beneficiaries of a member of a benevolent society who stands suspended for non-payment of assessments, by operation of the laws of the society, at the time of his death, cannot recover on the benefit certificate on the ground that the subordinate lodge of which he was a member had continued to treat him as a member, and to treat his unpaid dues to the supreme lodge as dues payable to the subordinate lodge for which it had extended credit to him."    The language of the presiding Judge, taken in connection with his general charge, show that the subordinate lodge or officer could only waive

any requirements while acting within the scope of their authority, and in this there was no error.

The eleventh exception is: "11. Because, it is respectfully submitted, his Honor, the presiding Judge, erred in refusing to charge the sixteenth request of the defendant, as submitted to the Court, and in modifying the same by saying: 'If a subagent, acting for a benevolent society, if he was acting within the scope of his agency, and, while doing such work as agent, he so conducted himself as to lead the insured to believe that the payment of dues in time or assessments in time would not be inforced, and the assured did not pay the dues or assessments in time, that would not make a forfeiture. The beneficiary society would be bound by that waiver, if waiver has been established;' thus assuming that the subagent of a benevolent society has the power, without special authority from the society itself or under its laws, to waive a forfeiture for non-payment of assessment or dues; whereas, it is respectfully submitted, the subagent of such an association cannot bind the association by acts of waiver not expressly authorized, and the members of such an association, being conclusively presumed to know the laws of the order, cannot take advantage of. any such alleged acts of waiver on the part of such subagent." This exception is disposed of by what was said in·considering the tenth exception. The contrary doctrine would lead to great fraud and injustice.

The twelfth exception is as follows: "12. Because, it is respectfully submitted, his Honor, the presiding Judge, erred in modifying the defendant's seventeenth request to charge, by saying: 'I charge you that, subject to the explanation I have already given you as to waiver or knowledge; thus assuming that the knowledge by the agent of his own delinquency and wrong doing in exceeding his authority as agent is, *per se,* the knowledge of the company, and that such knowledge constitutes a waiver by the company and binds the company; whereas, it is submitted, that where the insured knows that the agent is acting

outside of his authority, he cannot take advantage of such wrongful and unauthorized acts of the agents, and claim waiver by the company." In charging the request, subject to explanation already given in regard to waiver and knowledge, there was no error, unless there was error in the explanation already given, and we must look to other exceptions to ascertain this fact.

The thirteenth exception is as follows: "13. Because, it is respectfully submitted, his Honor, the presiding Judge, erred in modifying defendant's nineteenth request to charge by saying: 'Sometimes, if the evidence shows that the agent has knowledge or information, then his knowledge or information, in such an instance, is imputed to the principal. In that case, it is not necessary to prove actual knowledge on the part of the principal;' and in failing to add, that in no case can the knowledge or information of the agent be inputed to the principal, where such knowledge or information springs out of and is derived from acts of the agent himself in excess of his authority, and the limitations upon the agent's authority are conclusively presumed to be known to the assured. It is submitted that the charge, as thus modified, was misleading to the jury, because it involved the assumption that the knowledge of the agent is the knowledge of the principal, even when the agent is exceeding his authority in doing the particular thing as to which knowledge is to be shown, and though the assured himself is aware that the agent is exceeding his authority." Knowledge of an agent while acting within the scope of his authority is knowledge of the principal. *Am. Co.* v. *Felder,* 44 S. C., 478. The language of the Circuit Judge construed in connection with the entire charge shows that this is what was meant.

The fourteenth exception is as follows: "14. Because, it is respectfully submitted, his Honor, the presiding Judge, erred in refusing the defendant's twentieth request to charge. It is submitted that where the agent is one of limited powers, his authority to waive must be affirmatively shown,

if it is sought to hold the principal to such waiver."

The twentieth request was as follows: "20. A local agent, or one armed with restricted powers, cannot bind the insurer by a waiver unless it be *affirmatively* shown that he was authorized to waive it in the particular instance." The presiding Judge said: "I cannot charge you that in that form; I have already explained to you in what instance an agent may waive the terms of a contract, if he is acting for his principal." The request could not have been charged without trenching upon the rights of the jury.

The fifteenth exception is as follows: "15. Because, it is respectfully submitted, his Honor, the presiding Judge, erred in refusing the defendant's twenty-second request to charge; whereas, it is submitted, that knowledge of the default or forfeiture to be waived is the essential condition of a waiver, and, in the case of a mutual association or benevolent society, like the defendant in this case, *actual* knowledge by the supreme lodge or council of the habit of the collector of a subordinate lodge or council to receive assessments after they are due, under penalty of suspension and forfeiture of the benefit certificate issued by the supreme lodge or council, must be shown, in order to make such habit binding upon the supreme lodge or council, and operating in law as a *waiver* on its part." The twenty-second request is as follows: "22. The habit of the collector of a subordinate lodge of a mutual association or benevolent society to receive payments of assessments after the end of the month within which they are payable, under the penalty of suspension and forfeiture of the benefit certificate issued by the supreme lodge, does not constitute a waiver by the supreme lodge, and estop it from insisting on a forfeiture, where it has no knowledge of such habit." His Honor said: "I charge you what the law is. You must say whether the evidence amounts to such and such. I, therefore, cannot charge you that, if it has reference to the facts of the case. I will again say what I have often said, that the knowledge of the agent or the information of the agent, in

connection with the business of his agency, is regarded in law as the knowledge or information of his principal." He could not have charged as requested, without infringing upon the powers conferred upon the jury.

The sixteenth exception is as follows: "16. Because his Honor, the presiding Judge, erred in construing the defendant's twenty-second request to charge as involving a charge upon the facts of the case, and in refusing the same on that ground. It is respectfully submitted that said request stated a proposition of law only, and that said proposition should have been charged in the terms therein stated. The knowledge of the agent cannot be the knowledge of the principal, if he is acting beyond the authority conferred on him, and if that fact is known to the assured, even though the agent be acting within the *scope* of his agency." This is disposed of by what was said in considering the other exceptions.

The seventeenth exception is as follows: "17. Because, it is respectfully submitted, his Honor, the presiding Judge, erred in modifying the defendant's twenty-sixth request to charge by adding thereto the following: 'That is law, unless the agent was acting within the scope of his agency, and his acts amounted to waiver; then his acts would bind the principal.' It is submitted that in thus modifying the said request, his Honor ignored the fundamental distinction between authorized acts of an agent, done within the scope of his agency, and acts of an agent, done in excess of his authority and in violation of his instructions, though they may be within the scope of the agency. As to the latter, it is submitted they cannot, *per se,* bind the principal, or be construed as a waiver on his part, where the instructions of the agent or the limitations upon his powers are made known to the persons dealing with the agent, or may by ordinary prudence be learned by him. And in the case of a mutual benefit society, such as the appellant in the case is admitted, and is shown by its charter and laws to be, the fact that the members of such a society are conclusively presumed to know its laws, constitute a broad distinction between such societies

and the regular or old line insurance companies.   When-
ever, therefore, the collector or fiscal officer of a subordinate
council of such a society exceeds his authority and attempts
to waive a condition of the policy, the assured is estopped by
such knowledge on his part from setting up waiver, unless
he can show actual knowledge and waiver by the principal—
that is, by the supreme lodge." This exception is disposed
of by what was said in considering the other exceptions.

The eighteenth exception is as follows : "18. Because, it
is respectfully submitted, his Honor, the presiding Judge,
erred in modifying the defendant's twenty-seventh request
to charge by adding thereto the following : 'Also, that the
*insured or its agent* intended to waive.' It is sub-
mitted that the intention of the agent to waive could
not bind the principal unless the agent had power to
waive in the particular matter in question." The twenty-
seventh request to charge is as follows : "To make out a case
where the receipt of overdue premiums can be relied on to
create *a usage* that will estop the company from claiming a
forfeiture for non-payment of assessments, it must be shown
not only that premiums were *habitually* received by the in-
surer after they were due, which would be a waiver of those
several forfeitures, but also that the insurer *intended to
waive* the future prompt payment of the premiums as one of
the conditions of the contract, or that the assured, as a rea-
sonable man, was led to believe by its actions that it had
waived this condition." His Honor said : "I will charge you
that, with the addition to it, also, that the insured or its agent
intended to waive." These words must be construed in con-
nection with the entire charge, and are free from error.

The nineteenth exception is as follows : "19. Because, it
is respectfully submitted, his Honor, the presiding Judge,
erred in refusing the defendant's thirtieth request to charge,
and in charging without qualification that, 'an agent acting
within the scope of his agency, connected with the business
of his agency, may waive the terms of a policy.   If he does
so, his waiver binds the principal.' It is submitted that his

Honor, in thus charging, ignored the fundamental distinction between authorized acts of an agent done within the scope of his agency, and acts of an agent done in excess of his authority and in violation of his instructions, though they may be within the scope of his agency. As to the latter, it is submitted they cannot, *per se*, bind the principal or be construed as a waiver on his part, where the agent's instructions or the limitations upon his powers are known to the person dealing with the agent, or may by ordinary prudence be learned by him." This exception is disposed of by what has been said in considering the other exceptions.

The twentieth exception is as follows: "20. Because, it is respectfully submitted, his Honor, the presiding Judge, erred in modifying the defendant's thirty-first request to charge by adding thereto the following: 'Unless the agent knew. If he knew, then his knowledge would be the knowledge of the supreme council.' It is submitted that the knowledge of an agent in such case could not bind the supreme council, unless it was the knowledge of an agent who had authority to make reinstatements of suspended members, and not even then, if the laws of the supreme council expressly prescribed the manner and conditions of reinstatement, and such provisions were known, or conclusively presumed to be known, to the assured, or were a part of the policy and had not been carried out; because, in such case, the assured himself would be estopped by his own knowledge of the fact that the alleged waiver was in violation of the laws of the order, which, by its terms, constitute a part of the contract of insurance. The assured could not allege waiver by the supreme council, if the latter was in ignorance of the true condition of his health, unless he had himself taken the steps prescribed by his contract for advising the supreme council on that point." This exception is disposed of by what has been said already.

The twenty-first exception is as follows: "21. Because his Honor, the presiding Judge, erred in charging the jury, in response to the defendant's thirty-second request to charge, that 'ratification implies the ratifying an act beyond

3—57

the scope of an agency.' Whereas, it may also imply ratifying an act done by an agent within the scope of the agency but in excess of his authority *within* those limits, 'where the limitations are known, or presumed to be known, to the party with whom those agents deal. It is submitted that not only acts without the scope of the agency but also the unauthorized acts within the scope of the agency, where the party dealing with the agent knows, or is presumed to know, the limitations upon the agent's powers must be ratified by the principal, with the full knowledge of all the material facts, before he can be bound by them." We agree with the presiding Judge that the ratification only applies where the act was beyond the scope of the agency. If the act was within the scope of the agency, and was done by the agent while exercising those powers, there was no necessity for ratification.

The twenty-second exception is as follows: "22. Because, by the laws of the defendant, the collector of a subordinate council has no authority whatever to reinstate members suspended for non-payment of assessments, or to carry them on the books as if in good standing, and, on the contrary, they provide and declare that 'no member of a council suspended for non-payment of dues, fines or assessments, shall be reinstated in any other manner than herein provided, and any reinstatement of a suspended member by any council of the order in any other manner than herein provided shall be null and void.' And it is respectfully submitted, therefore, that his Honor, the presiding Judge, erred in not holding and so charging the jury as the law of this case, that the collector of the subordinate council had no power to bind the supreme council by waving non-payment of the assessments and the forfeiture and suspension caused thereby, unless he was either expressly or impliedly authorized to do so by the defendant itself, or its officers, and that such waiver could not estop the defendant, the supreme council, unless with a full knowledge of all the material facts, it subsequently ratified the acts of the collector in making it." This exception is

disposed of by what was said in considering the other excep-
tions.

The twenty-third and twenty-fourth exceptions are as fol-
lows: "23. Because, under the provisions of the Constitu-
tion of this State, relative to the duties of Judges in charg-
ing juries (art V., sec. 26), by which it is required that the
'Judges shall declare the law,' it is the duty of the Judge to
declare to the jury all the law applicable and material to the
issues in the case, whether specifically requested to do so or
not.   And it is, therefore, respectfully submitted that his
Honor, the presiding Judge, erred in that he failed and
omitted to charge the jury in this case, that, under the laws
of the defendant, the supreme council of the American
Legion of Honor, the collector of a local or subordinate
council of the order is not an agent of the supreme council,
and, therefore, cannot bind the said supreme council by any
acts of waiver, unless the said supreme council by its course
of conduct, with full knowledge of all material facts con-
nected with such alleged waiver, has induced the insured to
rely upon such waiver, or has otherwise ratified such acts of
the collector with such full knowledge.   24. Because, it is
respectfully submitted, under the provisions of the Consti-
tution of the State relative to the duties of the Judges in
charging juries (art. V., sec. 26), by which it is required
that 'the Judges shall declare the law,' it is the duty of the
Judges to declare to the jury the whole law applicable and
material to the issues in the case, whether specifically re-
quested to do so or not, and his Honor, the presiding Judge,
therefore, erred in failing and omitting to charge the jury
in this case that, inasmuch as waiver cannot operate as an
estoppel unless the other party has been thereby misled or in-
duced to act thereon, the omission of the plaintiff in her letter
to the officers and members of the local council of the Ameri-
can Legion of Honor (exhibit R), that her husband, the in-
sured, 'relied almost entirely upon me (her) to attend to all
business outside of his professional work,' including the pay-
ment of the assessments in the American Legion of Honor,

precluded the plaintiff from claiming that her husband was misled by waiver on the part of the collector of the local council, and estopped her from setting up' such waiver." The careful preparation of the numerous requests to charge, presenting all shades of the law bearing upon the case, and the full and able charge of the presiding Judge, shows that these exceptions cannot be sustained.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.