## 11997

### COPE v. JEFFERSON STANDARD LIFE INS. CO.

#### (133 S. E., 440)

1. INSURANCE.—Whether indulgences granted insured by insurer constituted waiver is question for jury.

2. INSURANCE.—When all facts, taken together, are sufficient to warrant inference of waiver of policy condition, such question is properly for jury, though no one fact alone warrants such inference.

3. INSURANCE.—Provisos for forfeiture in insurance contract are for benefit of insurer, and may be waived at insurer's option, and policy, on breach of condition, is not void, but merely voidable.

4. INSURANCE.—An agent authorized to solicit insurance may waive forfeiture.

5. CONTRACTS.—Forfeitures are not favored in law, and Courts are always prompt to seize hold of any circumstances indicating election to waive forfeiture or any agreement to do so on which party relied and acted.

Before SIMMS, SPECIAL JUDGE, Orangeburg, November, 1923. Affirmed.

Action by Lurline M. Cope, as administratrix of the Estate of Walter D. Cope, deceased, against the Jefferson Standard Life Insurance Company. Judgment for plaintiff and defendant appeals.

*Messrs. John S. Bowman, Wolfe & Berry,* and *Brooks, Parker & Smith,* for appellant, cite: *Insurance policy lapses on failure to pay premium or note given for premium:* 296 F., 339; 192 F., 408; 126 F., 82; 118 F., 250; 187 U. S., 335; 47 L. Ed., 204; 104 U. S., 252; 26 L. Ed., 765; 104 U. S., 88; 26 L. Ed., 662; 93 U. S., 30; 23 L. Ed., 789; 93 U. S., 24; 23 L. Ed., 789. *Usage and custom cannot operate as waiver of terms of written insurance contract:.* 104 U. S., 252; 26 L. Ed., 765; 169 F., 578; 24 F., 767; 28 S. W., 117; 93 Miss., 540. *No waiver by insurer:* 93 S. C., 90.

*Messrs. Hydrick & Whetstone* and *Raysor, Moss & Lide,* for respondent, cite: *Insurer waived prompt payment of*

*premiums:* 95 S. C., 1; 14 R. C. L., 1183. *Waiver a question for jury:* 57 S. C., 16. *Several facts taken together may constitute waiver:* 101 S. C., 249; 75 S. C., 334. *Forfeitures not favored in law:* 144 U. S., 439. *Insurance agent may waive forfeiture:* 54 S. C., 599. *Forfeiture once waived cannot afterward be insisted upon:* 19 L. R. A. (N. S.), 227. *Case distinguished:* 93 S. C., 90.

May 26, 1926.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an action upon a life insurance policy for $5,000 written upon the life of Walter D. Cope, deceased intestate; the policy was payable to his estate; and this action is brought by his wife as his administratrix. The complaint states in usual form an action upon a life insurance policy.

The defendant insurance company, by its answer, sets up the defense that the premiums were not paid when due, and that, therefore, the policy had lapsed and was forfeited at the death of the insured. In reply, the plaintiff respondent claimed that the lapse or forfeiture, if any, had been waived by the defendant appellant.

The case was tried at the November, 1923, term of the Common Pleas Court for Orangeburg County before Special Judge Chas. Carroll Simms, with a jury, resulting in a verdict for the plaintiff respondent for the amount demanded, with interest, less the premium charges due upon the policy, and less indebtedness due defendant under said policy. The defendant insurance company moved for a directed verdict, and also moved for a new trial, but both motions were refused.

The exceptions raise three questions: (1) Did the Court err in refusing to direct a verdict for the defendant or to grant it a new trial? (2) Did the Court err in charging the jury erroneous propositions of law? and (3) Did

the Court err in refusing to charge the jury certain propositions of law as requested by the defendant?

We think that his Honor was right in submitting the question of waiver to the jury under all the facts and circumstances of the case: The correspondence of Lyles and Lyles; Mr. Lyles' testimony; what the agent said about the "blue note" and the "yellow note," and the note renewed; and whether the health certificate was required or not; whether the insured was misled or not.

The question whether indulgences granted the insured by the defendant constituted waiver was properly submitted to the jury. It was not a question to be determined by the Court. *Sparkman v. Supreme Council,* 57 S. C., 16; 35 S. E., 391.

Even if no one of the facts testified to be sufficient in itself to warrant an inference of waiver, yet, if, when all are taken together, they tend to produce that result, then there was no error in submitting that question to the jury. *Dantzler v. Cox,* 75 S. C., 334; 55 S. E., 774. *Clark v. Insurance Co.,* 101 S. C., 249; 85 S. E., 407.

Provisions for forfeiture in an insurance contract are for the benefit of the insurer, and may be waived at the insurer's option. The policy is not void for breach of condition, but merely voidable. *Kingman v. Insurance Co.,* 54 S. C., 599; 32 S. E., 762. An agent authorized to solicit insurance may waive forfeiture. *Huestess v. Insurance Co.,* 88 S. C., 31; 70 S. E., 403. Forfeitures are not favored in the law, and Courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture or any agreement to do so on which the party had relied and acted. *Hartford Insurance Co. v. Unsell,* 144 U. S., 439; 12 S. Ct., 671; 36 L. Ed., 396.

It is said in *New Eng. Mut. Life Ins. Co. v. Springgate,* 129 Ky., 627; 112 S. W., 681; 113 S. W., 824; 19 L. R. A. (N. S.), 227:

"So the question comes to this: Did the company, when

the right to forfeit the policy accrued, elect to forfeit it or treat it as a subsisting obligation?   If it elected then to treat the policy as a subsisting obligation, it cannot, when subsequent events made it to its interest to do so, withdraw the election it then made, and say the policy was forfeited. Forfeitures are not favored in the law.   When once waived they cannot be afterwards insisted upon."

We see no error on the part of his Honor as made by the exceptions.

All exceptions are overruled, and judgment affirmed.

Mr. Acting Associate Justice J. H. Marion concurs in result.

Mr. Justice Marion concurs in result.

Mr. Justice Cothran:   I dissent from the conclusions announced by Mr. Justice Watts in this case, convinced that the judgment should be reversed for the following reasons:

This is an action upon a policy of insurance issued upon the life of Walter D. Cope for $5,000, dated September 15, 1917.   He died April 13, 1923.   The premiums for 1917, 1918, 1919, and 1920 were·paid when due by the insured. The premiums for 1921 and 1922 were not so paid, but were arranged by what is called "extension notes."   On January 15, 1923, the unpaid notes for the premiums due in 1921 and 1922 were consolidated into a note dated on that day, due March 15, 1923, for $250.   The defense of the company is that the policy had lapsed before the death of the insured by reason of the nonpayment of this note at maturity, and the failure of the insured to comply with the conditions of reinstatement.

The note is as follows:

"No. 54394 Cope, S. C. January 15th, 1923.   On or before 15th day of March, A. D. 1923, without grace and without demand or notice, I promise to pay to the order of Jefferson Standard Life Insurance Company two hundred fifty and No/100 dollars, at their home office in Greensboro, N. C., value received, with interest at the rate of six per cent. per annum.

"This note is accepted by said company at the request of the maker, together with sixty-seven and 55/100 dollars in cash, on the following express agreement:

"That, although no part of the premium due on the 15th day of September, 1922, under policy No. 54394, on the life of W. D. Cope, has been paid, the insurance thereunder shall be continued in force until midnight of the due date of said note; that, if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium and all rights under said policy shall thereupon be the same as if said premium had been paid when due; that, if this note is not paid on or before the day it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said company shall retain said cash as part compensation for the right and privileges hereby granted, and all rights under said policy shall be the same as if said cash had not been paid for this agreement made; that said company has duly given every notice required by its rules or by the laws of any state in respect to said premium, and in further compensation for the rights and privileges hereby granted the maker hereof has agreed to waive, and does hereby waive, every other notice in respect to said premium or this note; it being well understood by said maker that said company would not have accepted this agreement if any notice of any kind were required as a condition to the full enforcement of all its terms.

"W. D. Cope  [Seal.]"

The premium due on September 15, 1922, was $173.10, and this, with interest, plus the amount due upon the previous extension note, with interest, amounted to $319.50. This was arranged for with cash $67.50 and the above note for $252.

On March 7, 1923, the agents of the insurance company, eight days before the note fell due, notified Cope of the approaching maturity on March 15th, and specifically called

his attention to the fact that, if the note should not promptly be paid, "your policy will lapse," as "there are no days of grace allowed in which to pay this note and according to its terms." They added, "please let us hear from you by return mail." No attention whatever was paid by Cope to this notification, and the time passed without his having paid the note.

On March 20th the agents again wrote Cope, stating that they had heard nothing from him in reference to the premium note due March 15th. They proposed to grant him a further extension upon the payment by him of $32.50 cash and the execution of a new note for $220, payable May 15th. This made up the $250 note due March 15th, with $2.50 interest. Upon his compliance the agents agreed to return the old note of $250 to him. No attention whatever was paid to this proposition by Cope. He did not accept it. He ignored it.

On April 3d, the agents again wrote Cope stating that they had heard nothing from him in reference to the premium note due March 15th; Cope not having accepted or even noticed the former proposition made after the policy had lapsed. He paid no attention to this second proposition; did not accept it; ignored it as he had done the first. The agents proposed in this letter to grant him a further extension upon the payment by him of $52.50 and the execution of a new note for $200 payable May 15th.

Then, on April 9th, the agents wrote a third letter to Cope, in which they renewed the proposition of April 3d, but with the material change:

"We ask that you fill out and sign, having your signature witnessed, the inclosed application for re-instatement, and return to us by first mail, and we will take the matter up with the company."

The policy contains the following provision in reference to reinstatement:

"Should this policy cease and determine for nonpayment

of any premium, it may be reinstated at any time by the payment of the defaulted premiums with six per cent. interest and by furnishing the company with satisfactory evidence of insurability."

The insured was sick at the time the letter of April 9th was written, and was known to have been so by the agents. Three days later, on April 12th, some one acting for the insured, apparently, mailed to the agents a check for $52.50 and a signed note for $200, but without the signed application for reinstatement, which in the then condition of the insured could not have been executed. After the agents' notification of March 7th had been ignored, after the propositions of March 20th and April 3d had also been ignored, on April 12th, the day before he died, his decision, either voluntary or suggested, was manifestly actuated by the impending dissolution; his haste became imperative, and, as far as he could at that time comply, he attempted to comply with the proposition of April 9th, omitting an essential element in that proposition, the application for reinstatement.

The contention is now that there is evidence, based upon the letters of March 20th and April 3d, tending to show that the agents of the company waived the requirement of a proper showing of insurability.

In the proposition of March 20th, the agents wrote, suggesting the payment of $32.50 cash and the execution of a new note for $220, payable May 15th, that "upon receipt of same we will forward you the old note." The "new note" manifestly contained the provisions of the note of January 15th, due March 15th, and would have had the effect of continuing the insurance in force until midnight of May 15th, if the proposition had been accepted. This arrangement, doubtless, would have constituted a waiver of the provisions of the reinstatement clause relating to health certificate.

This proposition not having been accepted by the insured, the letter of April 3d was written. It amounted to a withdrawal of the proposition of March 20th. In suggesting

the payment of $52.50 cash and the execution of a new note for $200, payable May 15th, the agents stated:

"If you will sign this note and return to us together with $52.50, we can accept it for the note and continue your insurance in force until May 15th."

It would likewise have had the effect of continuing the insurance in force until midnight of May 15th, assuming that its terms were similar to those of the note due March 15th, if the proposition had been accepted. This arrangement, doubtless, as in the case of the proposition of March 20th, would have constituted a waiver of the provisions of the reinstatement clause relating to health certificate.

Neither the proposition of March 20th nor that of April 3d was accepted by the insured. Neither was anything more than a proposition, subject to withdrawal at any time prior to acceptance. *Oxweld v. Davis,* 115 S. C., 426; 106 S. E., 157. The proposition of March 20th was withdrawn by that of April 3d, and the proposition of April 3d by that of April 9th. It is impossible to conceive how a proposition, not accepted, and not changing the position of the other party in the slightest degree, can operate as a waiver of the terms of the policy.

Then the proposition of April 9th under changed conditions was made. It is conceivable that the agents, as they considered the physical condition of the insured on March 20th and April 3d, may have been disposed at those times to waive the matter of a health certificate, and yet, under the seriously changed condition on April 9th, four days before his death, have been entirely unwilling to do so. At any rate, it distinctly appears that they did not do so, and that the insured failed to comply with the conditions which were then imposed. Would it be fair to the company to hold that, because it was disposed at one time to waive a condition of reinstatement when circumstances justified it in doing so, it should be bound by such an unaccepted proposition, at a later date, when circumstances had changed and

the proposition also changed to meet them.   In other words, that a simple willingness at one time, unaccepted, will constitute a waiver for all time thereafter.

In the case of *Perkins v. Ins. Co.*, 93 S. C., 88; 76 S. E., 29, the Court, by Mr. Justice Watts, says:

"To hold under the facts here that there was a legal waiver would make it unsafe for a creditor to ever extend a debt or indulge a debtor.   Certainly an offer to reinstate on certain conditions, as was made in this case, cannot be regarded as a waiver, especially where the conditions are not complied with, and there is no contention here that the conditions were complied with."

"A waiver takes place when a man dispenses with the performance of something which he has a right to exact." 40 Cyc., 254.

It seems clear that a proposition, which, if accepted, would constitute a waiver, is up in the air, and ineffectual to constitute a waiver, unless accepted.   Both the propositions, March 20th and April 3d, were inoperative for any purpose until and unless accepted; and, of course, the proposition of April 9th could not constitute a waiver, for it specifically imposed the condition which is now sought to have been considered waived.

"A waiver of the condition of an insurance policy making the liability of the company for losses dependent upon prompt payment will not be inferred from * * * an offer of an extension of time of payment not accepted by the insured."   *Garlick v. Ins. Co.*, 44 Iowa, 553.

In *Sullivan v. Ins Co.*, 101 Ga., 809; 29 S. E., 41, an agent of the insurance company had demanded of the insured payment of a premium note after it had matured, the nonpayment of which avoided the policy.   It was claimed that the making of such demand amounted to a waiver of the stipulation.   The Court said:

"If, in any event, the fact that such a demand was made could be treated as a waiver, this certainly ought not to be

done when payment was refused. To hold otherwise, it seems to us, would be going contrary to the plainest principles of right and justice. At most, it could only be fairly said that the association had offered to waive the conditions expressed in the policy, and that the insured had declined to accept the offer."

To same effect is *Association v. Brown,* 103 Ga., 382; 29 S. E., 927. *Stephenson v. Ins. Co.,* 139 Ga., 82; 76 S. E., 592.

The same conclusion was reached by the Supreme Court of Washington in the case of *Iles v. Ins. Co.,* 50 Wash., 49; 96 P., 522; 18 L. R. A. (N. S.), 902; 126 Am. St. Rep., 886, where the Court says:

"To say that the mere offer to revive the policy on condition of payment being made operated to waive the forfeiture provision in the policy, notwithstanding the fact that payment was not made and the assured did nothing and assumed no liability which changed his situation, would, we think, do violence to elementary principles of fairness between men."

I think, therefore, that there was not a particle of evidence in the case which could form the basis of a waiver of the conditions for reinstatement, and that the defendant's motion for a directed verdict should have been granted.