# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## AETNA LIFE INSURANCE CO. V. RAGSDALE'S ADM'R.

### FEBRUARY 3, 1898.

### Absent, Cardwell, J.

1. INSURANCE—*Payment of Premium—Extension of Time—Forfeiture—Case at Bar.*—A letter from an insurance company in reply to a request from the assured, agreeing to grant an extension of time of payment of the premium on a policy upon the execution and return, before the policy lapsed, of an extension note enclosed in the letter, is not of itself a completed contract binding the company to grant the extension without the execution and return of the note. In the case at bar the insured has not been misled to his injury by the insurer. The insured forfeited his policy by his own negligence, and the forfeiture has not been waived by the company.

Error to a judgment of the Circuit Court of Pittsylvania county, rendered April 28, 1896, in an action of *assumpsit* wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Claude A. Swanson* and *Joseph Whitehead*, for the plaintiff in error.

*Peatross & Harris*, for the defendant in error.

HARRISON, J., delivered the opinion of the court.

On the 13th day of November, 1893, the Aetna Life Insurance Company insured the life of John M. Ragsdale for the

sum of $1,000 for twenty years in consideration of an annual premium to be paid at or before five o'clock P. M. on the 13th day of November in each year during the term of the policy. The first premium was duly paid. On the 12th of November, 1894, Ragsdale wrote to Meigs & Dustin, the agents of the company at Baltimore, for an extension of time in which to pay the second premium, which was about to fall due, and received the following reply:

"BALTIMORE, MD., Nov. 13th, 1894.

"J. M. RAGSDALE, ESQ., Laurel, Md.:

Dear Sir,—We are in receipt of your esteemed favor of November 12th, the contents of which we have noted with care. In reply, we take pleasure in enclosing you herewith note extending the time of payment of premium, under your policy, until December 13th. Kindly sign and return the same. We trust this extension will enable you to meet your premium. If this is not time enough, write us and we will be able to give you a little more time. We are very glad to be able to accommodate our policy holders, whenever it is in our power to do so. This note protects you fully until the date due.

Please advise us if Laurel is to be your permanent address, and oblige,       Yours very truly,

"MEIGS AND DUSTIN, Managers, R. D."

Ragsdale signed and returned to the agents the enclosed note, which was as follows:

"On or before the 13th of December, after date, without grace, for value, I promise to pay to the order of Meigs and Dustin, agents of the Aetna Life Insurance Company, of Hartford, Conn., $42.14 at his office, in Baltimore. This note being given to extend time of payment of renewal of premium on policy 221838 in said company, it is understood and agreed that if not paid when due, there will be no further extension, and

said policy shall then cease and determine, and shall be treated in all respects as if this conditional note and extension had not been given."

This note extended the time, and kept the policy in force until the 13th day of December, 1894. On the 10th of December, 1894, Ragsdale wrote to the agents, asking for a further extension of time, and received in reply the following letter:

"BALTIMORE, December 11th, 1894.

"J. M. Ragsdale, Esq., Chatham, Va.:

Dear Sir,—I have before me your esteemed request of December 10th, and note the situation of your finances at this time. In compliance with your request we hand you herewith an extension form, which please sign and return to us by due course of mail, when we will send you a receipt carrying your insurance in full force until the time named on the enclosure. This will be the latest day we can give you. We hope that you will find it to your convenience to pay this premium on or before that date.                    Yours very truly,

"H. B. MEIGS, Manager."

The "extension form" enclosed in this letter to be signed by Ragsdale and returned by due course of mail was a note like that given for the first extension, in consideration of which the time of paying the premium was to be further extended to December 31, 1894.

On the night of December 13th, 1894, the last day of the first extension, John M. Ragsdale, who had been in poor health for some time, was taken sick, and his brother-in-law, Scott Carter, now his administrator, called to see him. Up to this time no action had been taken by Ragsdale in respect to this last letter, and it was then determined, at the suggestion of Carter, that, instead of signing and returning the note, the

latter should forward the cash. Accordingly, on the morning
of the 14th of December, 1894, Carter mailed the agents a
letter enclosing a post-office order covering the premium then
due, and Ragsdale died at half-past three o'clock in the after-
noon of the same day.

The Carter letter, with the post-office order, was received by
the agents on the 15th of December, 1894, and on that day they
wrote the following reply:

"BALTIMORE, MD., December 15th, 1894.

"Mr. J. M. Ragsdale, Chatham, Va.:

Dear Sir,—We have your favor of the 14th, with post-office
order, bearing date December the 14th, for $41.77 cents. The
same is herewith returned to you, as we cannot accept the same,
as the premium, as extended, fell due December 13th, and we
did not receive yours with above enclosure until this date;
therefore, you are not insured. You will find enclosed health
certificate, Form 22, which, if you will kindly execute, have
duly witnessed, and return to us, with money order, we will be
pleased to send you receipt.                    Yours truly,

"MEIGS & DUSTIN, Managers."

It is true, as contended for appellee, that forfeitures are not
favored in the law; and that courts are always prompt to seize
hold of any circumstances that indicate an election to waive a
forfeiture, or an agreement to do so on which the party has
relied and acted.

Any agreement, declaration, or course of action, on the part
of an insurance company, which leads a party insured honestly
to believe that by conforming thereto a forfeiture of his policy
will not be incurred, followed by due conformity on his part,
will, and ought, to estop the company from insisting upon the
forfeiture, though it might be claimed under the express letter
of the contract. *Ins. Co.* v. *Eggleston*, 96 U. S. 572.

We are unable to discover, however, wherein deceased was misled to his injury by any action of appellant, or its agents. The company is bound, in the case at bar, by the action of its agents in extending the time of payment to December 13, 1894, and is bound by their action, if they further extended the time of payment, to December 31, 1894.

The right of recovery here must, therefore, turn upon the question whether or not the letter of December 11, 1894, from the agents to Ragsdale constituted a completed contract between the parties which bound the company to carry the policy in full force until December 31, 1894.

It seems clear, from the correspondence, that the extension note and the receipt to be given therefor, when executed, were together to constitute the contemplated extension contract. The letter of December 11 was in response to a request for further time. It merely informed the insured that the time would be extended upon the terms of the enclosed note, which must be executed and returned by due course of mail. Ragsdale was distinctly informed by the terms of the first extension note executed by him that the time of payment was only extended until December 13, 1894; that the policy would be protected by the note only until that date, and that if the premium was not then paid, the policy would cease, and determine, and be treated in all respects as if the note, and extension, had not been given.

The letter of December 11 does not state to what time the agents would consent to again extend the time of payment. This only appears from the extension note enclosed for Ragsdale to execute and return. There is nothing in the letter from which the plaintiff could reasonably infer that the forfeiture of the policy on December 13, 1894, according to the terms of the first extension note, was intended to be waived. On the contrary, the warning contained in the letter that the enclosed extension note must be executed and returned by due course of mail, indicated that prompt action was necessary to avoid the

forfeiture.   Instead of acting with promptness, no notice was taken of this letter until the night of December 13, when the insured determined not to execute the note, and requested his brother-in-law to send the cash, which was done the next day, December 14, by mailing the agents a post-office order covering the amount due.   The payment of the premium in cash, on or before December 13, the day it was due, would have been quite sufficient, instead of signing and returning the extension note. Its payment, however, after the policy had lapsed, could not operate to revive it, except with the consent of the company.

It is clear that the insured has lost the benefit of this policy in consequence of his own neglect, and through no fault of the company.

For these reasons, the judgment of the Circuit Court must be reversed and annulled, and judgment entered on the demurrer to the evidence in favor of the appellant.

*Reversed.*