8126, 8127.   SELMAN, administrator, *v.* MANHATTAN LIFE INSURANCE COMPANY; and *vice versa.*

1. Where a ten-payment endowment policy of life insurance is issued, and it is provided therein that it is to be as of a certain date in the future, and an agreement is made for term insurance to run from the date of the entry thereof on the policy to the time when the regular ten-payment policy begins, and a note is given for the amount of the premium due at the time named in the policy for the ten-year insurance to begin, in order to make the policy effective the note must be paid when due, or the time of payment extended by proper authority. (*a*) If the time of payment is extended, the note must be paid within the extended period.   (*b*) Propositions made by the insurance company to extend the time of payment of the note, or of the premium, must be accepted by the insured, before they will be binding on the company.

2. There was no error harmful to the defendant in excluding from the evidence the letter of the State manager of the insurance company to the insured, dated December 16, 1914.   Nor was there error in admitting certain testimony objected to as a whole, where a part of it was admissible and other parts were covered by evidence previously admitted without objection.

DECIDED JUNE 29, 1917.

Action on insurance policy; from Chattooga superior court—Judge Wright.   September 15, 1916.

*John D. & E. S. Taylor, H. L. Lanham,* for plaintiff.

*Robert C. & Philip H. Alston, Maddox & Doyal,* for defendant.

BLOODWORTH, J.　On April 21, 1914, C. S. Smith made application to the Manhattan Life Insurance Company of New York for insurance on his life for $5,000. On May 4, 1914, the application was amended so as to reduce the amount of insurance applied for to $2,000. In the application there was a clause as follows: "That there shall be no contract of insurance until the policy shall have been issued by the company and manually received and accepted and the first premium paid, all during the good health of the person whose life is to be insured." A policy of insurance was issued, the concluding clause of which was as follows: "In witness whereof the Manhattan Life Insurance Company has caused this policy to be executed as of the 15th day of November, 1914." On this policy was the following endorsement: "In consideration of the payment of $19.54, being the charge for term insurance from the 5th day of May, 1914, to the 15th day of November, 1914, the Manhattan Life Insurance Company hereby agrees, in case of the death of the insured within the above-mentioned period, to pay, according to the terms of the within policy, the sum insured, less an amount equal to the difference between the premium for one full year on said policy and the amount paid as above. On payment of the premium due on the 15th day of November, 1914, the within policy shall have the same force and effect as if said policy had been originally issued on that date. In witness whereof the Company has caused this agreement to be endorsed on the within policy, and executed this 5th day of May, 1914."

Upon the delivery of the policy to the insured he executed and delivered to the agent of the insurance company two promissory notes,—one for $19.54, in payment of premium to cover "term insurance" provided for on the back of the policy, as above set out, and the other what is known as a "pink note," which read as follows:

"$213.24.　　　　　　　　　New York, May 8th, 1914.

"Nov. 15th, 1914, after date, for value received, I promise to pay to the Manhattan Life Insurance Company, or order, at its office, No. 66 Broadway, New York, two hundred thirteen and 24/100 dollars, with interest at————. This note is given on account of the premium due November 15th, 1914, on policy No. 175120 issued by said company, and if it is not paid at maturity,

said policy shall be void. In case of the death of the insured before this note falls due, the above amount, with interest, shall be deducted from the amount of said policy.

(Signed) "C. S. Smith."

On the back of the note appears the following: "Pay to the order of M. B. Young. [Signed] Manhattan Life Insurance Co., M. DeMott, Secty."

Neither of these notes was paid by the insured, although it appears that the first-mentioned note, covering the period of term insurance under the policy, was paid to the company by the local or State agent. The insured, after failing to pay the second or "pink" note, was killed on June 18, 1915, and this action was brought by Selman, his administrator.

1. The evidence shows that the complete contract between the parties in this case embraced two forms and two periods of insurance on the life of the deceased: one in the nature of term insurance, which covered the period from May 5, 1914, to November 15, 1914, the premium upon which was represented by the first note, for $19.54 (and whether or not this particular note was ever paid by the insured is not now material), which branch of the contract was fully performed by the insurance company, and its obligations upon this branch of the contract automatically terminated on November 15, 1914; while the second and main feature of the contract, by the specific terms thereof and by the terms of the "pink note" (to be construed together), did not operate or become effective until the payment, at or before the maturity, of that note, which was given for the first full year advance premium due on November 15, 1914, at which time, if the said note was paid, the policy became a valid contract between the parties for the ten-payment, ten-year endowment policy of insurance upon the life of the insured, and which is the policy sued upon. The insured having failed to pay the "pink note," or otherwise arrange the amount of the advance premium for the first full year of the insurance by the date stipulated, the proposed contract for the endowment insurance was never in fact completed, and the policy was ipso facto void.

The contention of the plaintiff, that the company waived the failure to pay promptly the "pink note," that this note was not given in payment of the first premium, and that the policy was in

force at the time of the death of the insured, is without merit. Treating this note as given for the first premium, the regular ten-year policy, without payment of the note by November 15 (the date when due), or unless there was an extension of the time of payment thereof, was not binding on the company. The policy provides for the payment of premiums in advance, and the note expressly states in its face that if it is not paid at maturity, the policy shall be void. See *Stephenson* v. *Manhattan Life Ins. Co.*, 139 *Ga.* 82 (76 S. E. 592); *National Life Asso.* v. *Brown*, 103 *Ga.* 382 (29 S. E. 927); *Sullivan* v. *Conn. Indemnity Association*, 101 *Ga.* 849 (29 S. E. 41). Conceding that the "pink note" was not given for the first premium, and that as to this note the insured was entitled to the thirty-one days grace provided in the policy for all premiums except the first, this grace expired in December, 1914, several months before the death of the insured.

Several letters passed between Mr. Young, manager for Georgia, and the deceased. Granting that the effect of this correspondence was an extension of the time of payment of the note, the most liberal construction that could be put upon it would extend the time to January 1, 1915, only, and the insured died several months later. The letter from the manager dated December 17, 1914, offered to accept part payment in cash and carry the balance in two notes at six per cent. interest, one to be made due March 1st, the other May 15th, 1915. It was expressly stated that this offer must be accepted in six days, but the plaintiff did not accept the offer. In his letter of December 15, 1914, the insured asked Manager Young to wait on him until January 1, 1915. The manager replied as follows:

"Atlanta, Ga., December 17, 1914.

"Mr. C. S. Smith, Gore, Ga., R. No. 2.

"Dear Sir: Your letter of the 15th just to hand and contents noted, and in reply to same will say that we are glad to give you the assistance that you ask, and we are making notes accordingly, except, in making $66 payable January 1st, we are making it $69.54, so that it will cover both notes. Send us the check and notes, and if possible make the check payable by December 25th, as I will have to send my check to the home office on that date to cover this insurance. If, however, it is impossible for you to make it on the 26th, send me check and date it January 1st, 1915, and

sign the two notes as per your request, payable March 1, and May 15th. We will hold your check up to the time for which it is dated before we deposit it, but it will be necessary for you to sign these notes and send them in together with the check not later than the 22d inst., in order for us to keep things straight with the home office.

"Yours very truly, M. B. Young, Manager."

It will be noted that the time limit fixed by this letter was December 22, 1914, for the return of the check and the notes. This proposition was not accepted by the insured. Even prior to the time a policy of insurance lapses, a proposition of this kind must be accepted by the insured before it is binding. This principle is clearly stated in the following headnote from the case of Ætna Life Insurance Company *v.* Ragsdale, 95 Va. 579 (29 S. E. 328) : "A letter from an insurance company in reply to a request from the assured, agreeing to grant an extension of time of payment of the premium on a policy upon the execution and return, before the policy lapsed, of an extension note inclosed in the letter, is not of itself a completed contract binding the company to grant the extension without the execution and return of the note. In the case at bar the insured has not been misled to his injury by the insurer. The insured forfeited his policy by his own negligence, and the forfeiture has not been waived by the company."

If the time for paying the premium on a life-insurance policy is extended, the premium must be paid within the extended period. Ætna Life Ins. Co. *v.* Sanford, 200 Ill. 126 (65 N. E. 661) ; Homer *v.* Guardian Life Ins. Co., 67 N. Y. 478; Lantz *v.* Vermont Life Ins. Co., 139 Pa. 546 (21 Atl. 80, 10 L. R. A. 577, 23 Am. St. R. 202) ; *Bank of Commerce* v. *New York Life Insurance Co.,* 125 *Ga.* 552 (54 S. E. 643). Under the contract in this case, the failure by the insured to pay the "pink note" on or before its maturity worked a forfeiture of the policy, even though the company, through its agent, made an effort to collect the note and failed to do so. *National Life Asso.* v. *Brown, Sullivan* v. *Conn. Indemnity Asso.,* and *Stephenson* v. *Empire Life Insurance Co.,* supra. In addition to the above, the evidence shows that the "pink note" was returned to the home office of the company in New York in December, 1914, and was there cancelled on the regular note records of the company, and the policy itself was can-

celled on the books of the company on January 2, 1915.' After the cancellation was entered on the books of the company, it wrote to the insured in reference to a reinstatement of the ·policy, and on January 12, 1915, he replied to this letter as follows:

"Gore, Ga., January 12, 1915.

"Manhattan Life Insurance Co., New York, N. Y.

"Dear Sirs: Yours of the 5th to hand and contents noted. I am not able' to pay my premium note today, but by paying on it from time to time I can pay it off within the next six months. I can pay $30 on it to-day, and in sixty days hence I will be able to make another payment, of $40.00, and by the 15th of May or the first of June I can make the balance of the payments and pay up in full. Having land payments to make, and all out of six-cent cotton, until I can not make my full payment on my policy just now. I have $30 to-day and shall send it in just as soon as I can hear from you about the matter. Please answer immediately.

"Yours truly,          Collins Smith."

The company replied as follows:

"New York, N. Y., Jan. 19, 1915.

"Mr. C. S. Smith, Gore, Ga.

"Dear Sir: We are in receipt of your favor of the 12th inst., relative to policy No. 175120 on your life, and in reply beg to state that· we would be pleased to consider reinstatement on the above-mentioned policy, providing you will furnish us with a full satisfactory medical examination by Dr. W. T. Brant, of Summerville, Ga., so that it will pass our medical department, using the enclosed blank. We enclose herewith two temporary premium notes which you will please sign and return to us together with New York draft or post-office money-order for $30.00 at the time you send us the reinstatement certificate."

This letter of the company seems to have closed the correspondence. The term policy was in force from May 5, 1914, to November 15, 1914, for which period the insured paid nothing. The company extended to him every reasonable opportunity to protect his ten-year policy before it was cancelled on the company's records, and, even after this, offered to reinstate the policy on practically his own terms. If the insured had accepted either of the propositions, full waiver on the part of the company would have resulted and the company would have been bound. *Neal* v. *Gray,* 124 *Ga.* 510 (1), 514 (52 S. E. 622).

2. It was insisted that the court erred in excluding from the jury a certain letter of M. B. Young, the defendant's manager for Georgia, dated December 16, 1914, which was offered as evidence for the plaintiff. Even if this letter was admissible as against the objections raised, excluding it was not harmful to defendant. *National Life Asso.* v. *Brown,* and *Sullivan* v. *Conn. Indemnity Asso.,* supra.

3. Error is alleged in the admission of certain evidence of John F. Roche. This evidence was objected to as a whole. Parts of it were clearly admissible. Other parts were covered by evidence already admitted. There was, therefore, no error harmful to defendant in admitting the evidence of witness Roche as complained of.

*Judgment affirmed on main bill of exceptions; cross-bill dismissed. Broyles, P. J., and Jenkins, J., concur.*